UNITED STATES DISTRICT COURT

for the

District of Arizona

In the Matter of the Search of

**Samsung brand Cellular Device,
IMEI# 352656112586170**

)
)
)
)
)

Case No.   22-4087mb

## ELECTRONICALLY ISSUED SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer.

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of   Arizona.
*(identify the person or describe the property to be searched and give its location)*:   **See Attachment A.**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:   **See Attachment B.**

I find that the affidavit(s), or any recorded testimony, have been communicated by reliable electronic means and establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before

_____03/29/2022_____
*(not to exceed 14 days)*

☐ in the daytime  6:00 a.m. to 10 p.m.      ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the search warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave a search warrant copy and receipt at the place where the property was taken

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge

_Any U.S. Magistrate Judge in the District of Arizona_ .
*(Name)*

☐ I find that immediate notification may have an adverse result as specified in 18 U.S.C. §3103a  (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30).*

☐ until, the facts justifying, the later specific date of _____ .

Date and Time Issued: _____

**Camille D. Bibles** Digitally signed by Camille D. Bibles
Date: 2022.03.15 15:06:27 -07'00'

*Judge's Signature*

City and State:   Flagstaff, Arizona      Camille D. Bibles, United States Magistrate Judge

## <u>ATTACHMENT A – THING TO BE SEARCHED</u>

**Description:**  A black Samsung brand cellular device (unknown service provider). IMEI# 352656112586170, with a cracked screen.

**Location:**  The cellular device is located at the Law Enforcement and Investigations evidence room on Thompson Drive in Flagstaff, Arizona, within the Coconino National Forest LE&I office, which is in the District of Arizona.

## <u>ATTACHMENT B – THINGS TO BE SEARCHED FOR AND SEIZED</u>

1.      Indicia of ownership, possession, control, and/or use of the SUBJECT CELLULAR TELEPHONE, including the owner's and/or user's name, information identifying the owner and/or users from any social media applications (e.g., Facebook, Instagram, Snapchat, Twitter) used on the phone, contact information, and/or photographs (e.g., selfies).

2.      Any records or information concerning the identities of John Ander Smith (Smith) and/or Jonathan Kip Medford (Medford), including information in the contacts.  Information about Smith or Medford's identities includes their names, nicknames, birth dates, Social Security number, phone number(s), and addresses.

3.      Any records or information concerning any warrants for Medford's arrest.

4.      Any records or information concerning Sarah Ann Shea (Shea), including information in the contacts.

5.      Any text messages, phones calls, or emails between Medford and Shea, including any messages in any social media applications such as Facebook Messenger, Instagram, Snapchat, or Twitter.

6.      Any photographs and/or videos of Medford and/or Shea.

7.      Any records or information concerning the ownership/purchase/use of the 1996 Ford Econoline van bearing Arizona license plate 4DA6A2A.

8.      Any records or information pertaining to a person named "Jessie" and/or with Jessica Marie Russo, including information and/or records pertaining to the use, purchase, or possession of a Ford van and/or hiking/camping with "Jessie."

9.      Any records or information pertaining to camping in the national forest on or about February 14, 2022 to February 15, 2022.

10.      Any reference to the purchase and/or use of marijuana.

1

11.     Contact information with anyone who had been in communication with the owner/user of the phone from February 14, 2022 to February 15, 2022, including their name, address, phone number(s), to the extent available within the phone.

12.     Information about the phone itself, including the carrier (e.g., AT&T, Verizon), the model of the phone, and the phone number.

13.     Contextual information necessary to understand the above evidence.

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

This warrant authorizes a review of records and information seized, copied, or disclosed pursuant to this warrant in order to locate evidence and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  It is anticipated that the Federal Bureau of Investigation (FBI) may assist in the search of the phone.  Pursuant to this warrant, the FBI may deliver a complete copy of the seized, copied, or disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

| Return | | |
|---|---|---|
| Case No.: 22-4087mb | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____        _____
                                                                  *Executing Officer's Signature*

                                                         _____
                                                                  *Printed Name and Title*

FAX or Internet

# UNITED STATES DISTRICT COURT
for the
District of Arizona

In the Matter of the Search of:

**Samsung brand Cellular Device,**
    **IMEI# 352656112586170**

)
)
)
)

Case No.   22-4087mb

(Original To Be Filed With Court)

## ELECTRONIC APPLICATION FOR SEARCH WARRANT

      I, the undersigned, a federal law enforcement officer, request an electronic search warrant and state under penalty of perjury that I have reason to believe that on and within the following person or property:
    **See Attachment A.**
located in the _____ District of _____ Arizona _____, there is now concealed:
    **See Attachment B.**
The basis for the search under Fed. R. Crim. P. 41(c) is:

    [X] evidence of a crime;

    [ ] contraband, fruits of crime, or other items illegally possessed;

    [ ] property designed for use, intended for use, or used in committing a crime;

    [ ] a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Sections* | *Offense Descriptions* |
|---|---|
| 18 USC § 111(a) | Assault on Federal Officer with Physical Contact |
| 18 USC § 1001(a)(2) | Making False Statement or Fraudulent Representation |
| 21 USC 844(a) | Unlawful Possession of a Controlled Substance |

The application is based upon the following facts:
    [X] Continued on the attached sheet (see attached **Affidavit**).
    [ ] Delayed notice of _____ days (give exact ending date if more than 30 days) days:
        is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by: */s AUSA Paul Stearns*
**Pursuant to 28 U.S.C. §1746(2), I declare under penalty of perjury that the foregoing is true and correct.**

Executed on <u>March 15, 2022</u>

  __X__ Sworn by Telephone
Date/
Time: _____

City and State:  Flagstaff, Arizona

CODA WITT
Digitally signed by CODA WITT
Date: 2022.03.15 14:11:39 -07'00'
*Applicant's Signature*

Coda Witt, Special Agent, USFS
*Printed Name and Title*

Camille D. Bibles
Digitally signed by Camille D. Bibles
Date: 2022.03.15 15:05:58 -07'00'
*Judge's Signature*

Camille D. Bibles , United States Magistrate Judge
*Printed Name and Title*

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

## ELECTRONICALLY SUBMITTED REDACTED AFFIDAVIT

Your affiant, <u>Coda P. Witt</u>, a Special Agent with the United States Forest Service, states under oath as follows:

1.      Your affiant is employed by the United States Forest Service (USFS) Law Enforcement and Investigations (LE&I) in Flagstaff, Arizona.  Your affiant is assigned as a Special Agent within the Coconino National Forest, which is in the District of Arizona.  Your affiant is a graduate of the Federal Law Enforcement Training Center for the Criminal Investigator Training Program.  Your affiant is also a graduate of the Land Management Police Training from the Federal Law Enforcement Training Center. Your affiant has 14 years of federal law enforcement experience with the USFS.

2.      The information contained in this affidavit is from my personal knowledge, as well as information from others including those set forth further below.  Additionally, in preparing this affidavit, your affiant has reviewed the probable cause statements from the victim-officer in this case, as well as his body camera footage pertaining to the assault.  Because this affidavit is being made to establish probable cause, your affiant has not listed every fact known regarding this investigation.

## **Introduction**

3.      This case involves an assault (with physical contact) on a federal law enforcement officer by Jonathan Kip Medford (Medford).  The assault took place after Medford and a female subject, Sarah Ann Shea (Shea), were contacted by the officer in Coconino National Forest.  During the contact, Medford lied about his name, was uncooperative (refusing to follow commands), and eventually charged at and assaulted the officer.  During the assault, Medford repeatedly attempted to disarm the officer.  The officer eventually got free, and Medford fled the area on foot.

4.      The female accompanying Medford, Shea, was present when Medford provided a false name to the federal officer.  While Shea had been "stopped" (i.e., contacted and told of the investigation) by the federal law enforcement officer as part of the investigation, she fled the scene after Medford assaulted the officer.  Shea did not call or otherwise notify the police, and she did not assist the officer when he was assaulted.  Shea was pulled over shortly thereafter by an officer from the Sedona, Arizona Police Department.  At the time, Medford had not been captured, he was on the run, and his identity was unknown.  Shea told a Yavapai County Sheriff's Office deputy that the man she had been with – who assaulted the federal officer – was John Smith.  Based on the investigation, it is believed that Shea knew the true identity of Medford but concealed and/or lied about his name to law

enforcement officers.  Shea was detained and ultimately arrested on federal charges in Case No. 22-04053MJ-01-PCT-CDB.

5.     The assault/incident took place on February 15, 2022.  Medford was located by Jerome Police Department officers on February 16, 2022, and he was arrested on outstanding state warrants.  A federal arrest warrant was issued for Medford in Case No. 22-4056-MJ-CDB.  Two prior search warrants have been obtained related to this matter:  Case Nos. 22-4063-MB and 22-4077-MB .

6.     The purpose of the proposed search warrant is to obtain additional information identifying Medford, as well as Medford and Shea's relationship to one another, and to show that Shea knew Medford's real name and knowingly provided false information (or concealed information) about Medford's real identity to law enforcement.  It is also believed that the warrant will provide information about the ownership and/or use of the van by Medford and support false statements by him (and to some extent Shea), including his use of a false name and who he claimed they were camping with.  Such information will also further corroborate Medford's illegal camping.

7.     The cellular device to be searched is a Samsung smartphone with a cracked screen – referred to as the SUBJECT CELLULAR TELEPHONE – and it is particularly described in Attachment A.  It is believed that Medford is the owner/user of this phone, as it was found in the front driver seat of the van that Medford appeared to be occupying.  (Medford claimed that the van belonged to a

female by the name of Jessie.)   The van was eventually towed, and no one has claimed the van as of this affidavit.

## Investigation/Probable Cause

8.      On February 15, 2022, USFS Law Enforcement Officer C.R. (LEO C.R.) responded to a report of vehicles blocking National Forest System Road (NFSR) 525D on the Red Rock Ranger District, Coconino National Forest, in the District of Arizona.  Upon arrival in the area, LEO C.R. contacted multiple groups of individuals in the area.  The last contact LEO C.R. made was with two adult individuals, a male and a female, who were later identified as Jonathan Kip Medford (Medford) and Sarah Ann Shea (Shea).  Medford and Shea had two vehicles parked just off the road, a Toyota Prius, and a Ford van.  They had two dogs with them that were off leash.  *See* 36 C.F.R. § 261.8(d) (dog off leash).  It appeared that Medford and Shea had camped in the area in violation of USFS regulations.   36 C.F.R. 261.58(e) (camping where prohibited).

9.      During the contact, LEO C.R. informed the two subjects that they were in violation of the no-camping order.  LEO C.R. attempted to positively identify the two subjects.  The male subject gave LEO C.R. the name of John Ander Smith – he said he had a Florida identification card that was not with him – and the female subject gave the name of Sarah Ann Shea.  LEO C.R. gave the names and dates of birth (DOB) to the Yavapai County Sheriff's Office dispatch (YCSO), and YCSO dispatch informed LEO C.R. that there was no return for a male subject by that name

and DOB.  (Shea's information did return.)  While waiting for YCSO dispatch to gather the information, LEO C.R. also gave YCSO dispatch the license plates for both vehicles.

10.    LEO C.R. asked Medford and Shea who the vehicles at the campsite belonged to.  Shea stated the Toyota Prius belonged to her, and Medford told LEO C.R. that the Ford van belonged to a friend named Jessie.  Medford said that Jessie went on a hike approximately two hours prior, and that she goes on long hikes. Medford said that he and Shea had come out the night before, met their friend (Jessie), and stayed the night there with her.  Medford also told LEO C.R. that he was in the Prius with Shea; Shea nodded in agreement.  It should be noted that Shea was present when Medford made these statements to the LEO about Jessie, the Ford van, and how long they had camped in the area.[1]

11.    A short while later, LEO C.R. informed "Smith" (Medford) that he was being detained and not free to leave so that the LEO C.R. could confirm Smith's identity.  LEO C.R. instructed Medford to turn around and place his hands behind his back.  Medford initially turned around and placed his hands behind his back.  He then became verbally non-compliant and turned around facing LEO C.R.  Medford

---

[1] It should be noted that after Medford assaulted and fled from LEO C.R., no one (including a person named Jessie) came back to the van and claimed ownership of it or any of the property in the camp or van.  Likewise, no one named Jessie came back to the area from a hike.  Importantly, following the assault, law enforcement officers were at the scene for approximately 12 hours.

told LEO C.R. that he was not going to be handcuffed, and Medford began to walk away from LEO C.R. saying something to the effect of, "what the fuck bro ..." Medford ignored LEO C.R.'s repeated commands, including not to walk away.

12.    LEO C.R. pulled his OC spray (i.e., pepper spray) from his duty belt. At the time, based on your affiant's review of LEO C.R.'s body camera video, Medford appeared to be approximately 15 feet from LEO C.R.  LEO C.R. told Medford not to walk away and to spread his feet, and Medford said something to the effect of, "or what."  At that point, Medford turned toward LEO C.R. in an aggressive manner.  Fearing an imminent attack, LEO C.R. deployed his OC spray on Medford.  Medford then charged LEO C.R. as LEO C.R. backed up.  (Based on Medford's demeanor and actions, LEO C.R. had removed his OC spray from his belt as Medford became more and more uncooperative.  Thus, LEO C.R. was able to spray Medford as he started charging forward, which happened very quickly.) Medford then stated, "Fuck You" and pulled his arm back.  Based on your affiant's review of LEO C.R.'s body camera video, it appeared that Medford was trying to punch LEO C.R. as Medford was charging toward the officer.

13.    Medford grabbed ahold of LEO C.R. and the two fell to the ground. During the time LEO C.R. and Medford were on the ground, Medford attempted to choke LEO C.R. but was not fully successful.  LEO C.R. felt Medford grab ahold of his duty weapon, which was still secured in the officer's holster.  As LEO C.R. was laying on the ground, he could feel Medford grab ahold of his duty weapon again.

Medford began to pull on the duty weapon, attempting to remove it from the holster but it did not come out.  Medford then told LEO C.R. something to the effect of, "Just let it happen."  LEO C.R. was ultimately able to free himself from Medford, and LEO C.R. was able to get to his feet.

14.     Medford began to flee from LEO C.R.  Medford said something to the effect of the following to Shea: "Go, you don't want to be a part of this."  LEO C.R. tried to unholster his duty weapon, but the holster was malfunctioning due to issues from the struggle with Medford.  LEO C.R. then pulled a backup pistol.  Medford told LEO C.R. that he was going to have to shoot him (Medford).  LEO C.R. notified YCSO dispatch by radio that Medford was fleeing and was wearing a gray long-sleeved shirt, jeans, and possibly a black neck gator.  LEO C.R. later informed incoming law enforcement units that Medford was also wearing a cloth belt and a pair of low top sneakers.

15.     LEO C.R. gave chase but lost sight of Medford.  Thus, LEO C.R. discontinued the search and returned to secure his patrol vehicle.  Later, additional police units arrived to assist in attempting to locate Medford.  As stated above, during the entire time of the search, nobody made any attempts to contact law enforcement about the van or come to the scene to retrieve the van as their property. (The Arizona license plate on the van is registered to Jessica Marie Russo; however, there was an open, signed title in the vehicle suggesting that it had been sold.  The

registration was also expired. Attempts to contact Russo have so far been unsuccessful.)

16.    Medford fled on foot and was not captured until the next day. He was arrested and booked into the Yavapai Detention Center for state warrants out of Yavapai County. Shea fled the area during this incident, and she was later located by local law enforcement officers. Shea was subsequently arrested on misdemeanor federal charges, including interference for fleeing the stop. It should be noted that when Shea was stopped by local law enforcement officers, she told the officer that the person she had been camping with was John Smith.

17.    LEO C.R. was (and still is) employed with the USFS as a law enforcement officer. He was in uniform and had responded to the area in a marked USFS LEO vehicle. LEO C.R. was working in the course and scope of his duties as a law enforcement officer when he was assaulted by Medford. LEO C.R. sustained injuries, including scrapes and cuts, during the assault by Medford. LEO C.R. also has neck and wrist pain because of the assault. During the incident, Medford attempted to forcibly remove LEO C.R.'s firearm (a pistol) from LEO C.R.'s duty holster.

18.    Medford was identified through (among other things) photographs and in comparison, to body camera video from LEO C.R.'s body camera. It should be noted that LEO C.R.'s body camera was dislodged by Medford during his assault of LEO C.R.; however, the initial attack can be seen on the body camera and then heard.

LEO C.R. commented at least twice during the assault that Medford was trying to get his (LEO C.R.'s) gun.

19.     A police K9 team out of Gila County was asked to assist with the search of Medford.    Before the K9 search began, the K9 handler, Detective L. Kerszykowski, ran his K9 around the Ford van.  The K9 gave a positive alert of narcotics at the passenger front door.  (The K9 was not trained to detect marijuana because possession of small amounts of marijuana has been legalized by the State of Arizona.  However, marijuana is illegal federally under 21 U.S.C. § 844.)  During the search for narcotics, a cellular phone was located on the front driver seat of the vehicle along with a crossbow, knives, and a spear.[2]  Several pairs of men's shoes, along with men's clothing, were observed inside the van.  No narcotics were found in the van.  However, a small amount of marijuana, as well as drug paraphernalia, was observed in the van.  An open vehicle title was also discovered in the van.[3]

---

[2] Medford had a knife in a sheath when he was contacted by LEO C.R.  However, at one point, when LEO C.R. commented about the knife, Medford pitched the knife into the nearby shrubbery.  Based on the contents observed in the van, that the Prius belongs to Shea (who fled in it), that the van was at Shea and Medford's camp, and that no one else was observed in the camp (or returned to the camp), the logical inference is that Medford was driving, using, and/or occupying the Ford van.

[3] Prior to your affiant's arrival at the scene of the assault, YCSO deputies did a quick visual search of the van for any other occupants.  No one was observed in the van; however, at that time, they observed male clothing, knives, and drug paraphernalia in the van.  A subsequent search of the vehicle was conducted by LEO C.R. and a YCSO deputy looking for documents to identify the male subject who had fled and had not yet been identified.  During that search, LEO C.R. observed a marijuana pipe with suspected marijuana in the bowl, as well as the title to the vehicle.  The title was taken from the vehicle in order to attempt to identify "Smith," who had assault LEO C.R. and fled.  Your affiant was handed the title to the van by a YCSO deputy during a subsequent search of the vehicle for

20.     Medford was arrested by the Jerome Police Department on February 16, 2022 on his outstanding state warrants.  Your affiant, along with USFS Captain Pederson, spoke with Medford on the evening of February 16, 2022, after reading him the Miranda warning.  In summary, Medford admitted that he had been involved in an incident with a Forest Service LEO.  Medford stated that USFS LEO sprayed him (Medford) with pepper spray, and that he got into a physical altercation with the LEO.  Medford claimed that the USFS LEO assault him (Medford).  Medford admitted that he left the area on foot.

21.     During the interview, Medford claimed that he has lots of "skills," including martial arts training and wilderness survival training.  He said something to the effect of, 'No one can find me in the woods.'  Medford also said something to the effect that if your affiant and Captain Pederson would let him out of the handcuffs, we could fight right now.  Your affiant and Captain Pederson declined.

22.     On March 1, 2022, your affiant called Lieutenant John Johnson (Lt. Johnson) of the YCSO regarding the information he received from Shea when she was stopped and arrested by Sedona Police after she fled the scene as described above.  Lt. Johnson stated that when he arrived at the traffic stop, Shea was in

---

narcotics (after the K9 alerted on the vehicle).  Your affiant was informed that the title was located on the front passenger seat.  The title to the van had been signed by the registered owner, Jessica Marie Russo (Russo), as if she had sold it but there was no signature for the buyer.  Thus, it was essentially an open title.  It should be noted that the license plate on the van came back to Russo, not Medford.  Thus, assuming Medford had purchased the van from Russo, he was driving the van with illegal plates (and expired registration).

handcuffs.   During his contact with Shea, Lt. Johnson read Shea the Miranda warning before asking her questions related to the assault on LEO C.R.  Lt. Johnson asked Shea who she was with at the scene in the forest, and she told Lt. Johnson, "John Smith."

23.    On March 4, 2022, your affiant executed a federal search warrant on the 1996 Ford Econoline van bearing, Arizona license plate 4DA6A2A, which is the van that was at the scene of the assault on LEO C.R.  During the search of the vehicle, the following things (among others) were recovered from inside the van:  (a) the SUBJECT CELLULAR TELEPHONE described further in Attachment A; (b) retail receipts with Medford's name on them; (c) a greeting card from Sarah Shea to "Kip" (Medford's middle name); (d) a small amount of marijuana and paraphernalia; and (e) a pill bottle for medication for a canine by the name of "Sedona," with the owner listed as Sarah Shea.  Additionally, what appeared to be male clothing and shoes were observed in the van.

24.    As described above, Medford told LEO C.R. that the van did not belong to him.  Medford said the van belonged to a friend of theirs, "Jessie," and Medford claimed that she was on a long hike.  However, "Jessie" never returned to the van while law enforcement officers were present at the scene after the assault, and no one has attempted to claim the van as of this affidavit.  Additionally, an open Arizona title was located (and recovered) in the van.  It showed the (prior) owner as Jessica Marie Russo, and Russo signed the title as the seller but the owner section was left

blank. Thus, it is believed that Medford was driving, using, and/or occupying the van, and that the SUBJECT CELLULAR TELEPHONE belongs to Medford.

### Things to be Searched for and Seized

25. Your affiant is seeking to search the SUBJECT CELLULAR PHONE described in Attachment A for evidence pertaining to violations of 18 U.S.C. §§ 111(a) (assault on a federal officer), 1001(a) (false statements), and 21 U.S.C. § 844(a) (unlawful possession of marijuana, which was located in the van). The things to be searched for and seized are particularly described in Attachment B and include things related to Medford's identity, false statements to LEO C.R., and the unlawful possession of marijuana. Additionally, such information may support false statements by Shea and her attempt to conceal Medford's identity after he fled. *See* 18 U.S.C. §§ 3 (accessory after the fact) and 4 (misprision of a felony).

26. Among other things, your affiant is seeking to search the SUBJECT CELLULAR TELEPHONE for records of (among other things) ownership information for the phone, text messages/phone calls/emails between Medford and Shea, photographs/videos of Medford and/or Shea (including information in the contacts), evidence pertaining to the ownership/purchase/use of the van, evidence pertaining to camping in the national forest, and evidence pertaining to the purchase and/or use of marijuana.

27. *Probable cause.* Your affiant submits that there is probable cause to believe records and information relevant to the criminal violations set forth in this

affidavit will be stored on the SUBJECT CELLULAR TELEPHONE for at least the following reasons:

      a.     Your affiant knows that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The cellular telephone is an instrumentality of the crime because it may be used as a means of committing the criminal offense. The cellular telephone is also likely to be a storage medium for evidence of crime. Moreover, evidence within a cellular telephone may assist in tracking a person's movements and actions prior to any crimes that they may have committed, which may further corroborate information already know (such as a person's whereabouts and issues pertaining to identification).

      b.     In this case, for example, Medford claimed that the van belonged to someone other than himself who had camped with Medford and Shea (i.e., a female named Jessie), even though a person named Jessie never returned to the van. Medford also provided a false name and birth date to LEO C.R. Based on your affiant's training and experience, cellular phones (particularly smart phones) have ownership information contained with the data of the phone. Most cellular phones will have the owner's name somewhere within the contacts, texts, and/or emails of the phone. Additionally, such information may be in social media applications used on or through the phone (such as Facebook, Instagram, Snapchat, or Twitter). Your

affiant also knows, based on training and experience, that birthdates and other personal identifiers (e.g., photographs, videos, and names associated with texts or emails) are usually within a cellular phone.  Similarly, based on your affiant's training and experience, it is known that people who are camping together will frequently communicate about the trip or other activities.  Moreover, in this case, the evidence from the van (e.g., greeting card from Shea to "Kip") – as well as the simple fact that Medford and Shea were  together – support that they knew each other and may have been in a relationship.  Thus, evidence within the phone is believed to support false statements, as well as additional information about Medford's identity (and his illegal camping).  Likewise, such evidence may further support Shea's relationship and/or knowledge of Medford's true name.

    c. Based on your affiant's knowledge, training, and experience, it is known that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books"; photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

d.      Based on my knowledge, training, and experience, your affiant knows that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet.  Electronic files downloaded to a cellular telephone can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

e.      *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your affiant is applying for would permit imaging or otherwise copying the contents of the SUBJECT CELLULAR TELEPHONE, including the use of computer-assisted scans.

28.    The things to be searched for and seized are further described in Attachment B.

## Conclusion

29.     The events described above occurred within the District of Arizona on or about February 15, 2022.  Based on the foregoing, your affiant believes that there is probable cause to support violations of federal law by Medford under 18 U.S.C. §§ 111(a)(1) and 1001(a)(2), as well as a violation under 21 U.S.C. § 844(a), and that evidence of those violations is within the SUBJECT CELLUAR TELEPHONE described in Attachment A.  *See also* 18 U.S.C. §§ 3 (accessory after the fact) and 4 (misprision of a felony).  The things to be searched for and seized are particularly described in Attachment B.

30.     Because the warrant pertains to a cellular phone that is already in the custody the USFS, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.  Accordingly, your affiant respectfully requests the issuance of a federal search warrant.

**Pursuant to 28 U.S.C. § 1746(2), I declare that the foregoing is true and correct to the best of my knowledge and belief.**

CODA WITT <small>Digitally signed by CODA WITT</small>
<small>Date: 2022.03.15 14:13:10 -07'00'</small>
_____
Coda P. Witt, Special Agent
USFS, LE&I

 X  Sworn by Telephone

Date/Time:_____

March 15, 2022_____
Executed on (Date)

Camille D. Bibles <small>Digitally signed by Camille D. Bibles</small>
<small>Date: 2022.03.15 15:05:23 -07'00'</small>
_____
Camille D. Bibles
United States Magistrate Judge

- 16 -

## <u>ATTACHMENT A – THING TO BE SEARCHED</u>

**Description:**  A black Samsung brand cellular device (unknown service provider). IMEI# 352656112586170, with a cracked screen.

**Location:**  The cellular device is located at the Law Enforcement and Investigations evidence room on Thompson Drive in Flagstaff, Arizona, within the Coconino National Forest LE&I office, which is in the District of Arizona.

## ATTACHMENT B – THINGS TO BE SEARCHED FOR AND SEIZED

1.      Indicia of ownership, possession, control, and/or use of the SUBJECT CELLULAR TELEPHONE, including the owner's and/or user's name, information identifying the owner and/or users from any social media applications (e.g., Facebook, Instagram, Snapchat, Twitter) used on the phone, contact information, and/or photographs (e.g., selfies).

2.      Any records or information concerning the identities of John Ander Smith (Smith) and/or Jonathan Kip Medford (Medford), including information in the contacts.  Information about Smith or Medford's identities includes their names, nicknames, birth dates, Social Security number, phone number(s), and addresses.

3.      Any records or information concerning any warrants for Medford's arrest.

4.      Any records or information concerning Sarah Ann Shea (Shea), including information in the contacts.

5.      Any text messages, phones calls, or emails between Medford and Shea, including any messages in any social media applications such as Facebook Messenger, Instagram, Snapchat, or Twitter.

6.      Any photographs and/or videos of Medford and/or Shea.

7.      Any records or information concerning the ownership/purchase/use of the 1996 Ford Econoline van bearing Arizona license plate 4DA6A2A.

8.      Any records or information pertaining to a person named "Jessie" and/or with Jessica Marie Russo, including information and/or records pertaining to the use, purchase, or possession of a Ford van and/or hiking/camping with "Jessie."

9.      Any records or information pertaining to camping in the national forest on or about February 14, 2022 to February 15, 2022.

10.     Any reference to the purchase and/or use of marijuana.

11.     Contact information with anyone who had been in communication with the owner/user of the phone from February 14, 2022 to February 15, 2022, including their name, address, phone number(s), to the extent available within the phone.

12.     Information about the phone itself, including the carrier (e.g., AT&T, Verizon), the model of the phone, and the phone number.

13.     Contextual information necessary to understand the above evidence.

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

This warrant authorizes a review of records and information seized, copied, or disclosed pursuant to this warrant in order to locate evidence and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  It is anticipated that the Federal Bureau of Investigation (FBI) may assist in the search of the phone.  Pursuant to this warrant, the FBI may deliver a complete copy of the seized, copied, or disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.